JANVIER, Judge.
The automobile collision from which this suit results occurred in Jefferson Parish on the west side of the Mississippi River at the point at which the Fourth Street Highway forms a T-junction with Barataría Boulevard.
The accident occurred at about 9:30 o’clock on the night of March 6, 1954. The cars involved were a Buick sedan, owned and operated by Harold A. Olivier, and in which with him were his wife and their three minor children, and a Chevrolet car owned and driven by Joseph Breaux and in which with Breaux were Miss Shirley Theriot and her brother. Her brother has died since — not as a result of the accident— and therefore could not be produced as a witness.
The Olivier car had stopped at a filling station and refreshment stand located on the side of Barataría Boulevard at a point almost opposite the junction of that boulevard with the Fourth Street Highway.
After stopping at the filling station, Olivier intended to drive out Barataría Boulevard towards Lafitte and, as he left the filling station, he was facing directly across the Boulevard and in front of him was the automatic semaphore traffic light which controlled traffic at that intersection. At that time the light showed red so he waited a few moments for it to change. However, when the red light was automatically extinguished, the green light did not appear and he realized that it must be broken. He, therefore, waited a few moments to make certain that it was safe for him to enter and that the light to vehicles on the boulevard was unfavorable, and after waiting for this short time, he entered the boulevard under the light fixture and turned to his left to go towards Lafitte. In the meantime, the Chevrolet car of Breaux, which was on Barataría Boulevard, had been approaching the intersection at which Breaux intended to turn to his left into the Fourth Street Highway on his way towards Westwego. Thus, as Olivier turned to his left out Barataría Boulevard and as Breaux turned to his left, to proceed on Fourth Street, the two cars met in collision.
The exact point of the impact is in dispute. Olivier says that he had completed the turn to the left and had proceeded a short distance when the Breaux car crashed into the side of his Buick. Breaux says that the collision took place just under the traffic light and as the Olivier car entered the highway right in front of his car.
The Olivier car was practically demolished and Olivier, his wife and the three minor children sustained physical injuries.
Olivier had secured a policy of liability insurance from Transcontinental Insurance Company and Breaux had obtained a similar policy from Traders & General Insurance Company.
There was and is no doubt whatever about the negligence of Breaux who entered the intersection at high speed and *703 turned without reducing his speed and without any regard whatever to the fact that the Olivier car was in or dangerously near to the intersection. Realizing this, Traders & General Insurance Company, Breaux’ insurers, decided that it would be best to attempt to settle by compromise the claim of Olivier for damages to his car and for his personal injuries, the claim of Mrs'. Olivier for her injuries, and the claims on behalf of the three Olivier children for their injuries. That company suggested to Transcontinental Insurance Company that they jointly attempt to settle the various claims, but the Transcontinental Company, feeling that Olivier had not been in any way at fault, refused to join in the making of those compromises. Traders & General Insurance Company negotiated for the settlement of all of those claims insofar as they were against Breaux or his insurer, the said Traders & General Insurance Company. Accordingly, that company agreed to pay a total sum of $1,000 in settlement of the claims of all of the Oliviers against Breaux or against it, and it obtained a signed release agreement from Olivier and Mrs. Olivier and also from Olivier as the administrator of the estates of his several minor children, and, under those release agreements, it paid the $1,000 to Olivier and the attorney for the Oliviers, and the said attorney has deposited the $1,000 in escrow, apparently to be held until all claims have been settled amicably or as the result of any judgments which may be rendered. In these several releases it is stated that Olivier received $800, Mrs. Olivier $50, and Olivier, for the use and benefit of each of his three children, $50, and in each settlement agreement there was a statement “specially reserving all rights against Transcontinental Insurance Company and other parties.”
After these settlements were effected, Mrs. Olivier, on her own behalf, and Mr. Olivier, as administrator of the estates of his three minor children, brought this suit against Transcontinental Insurance Company, alleging that the accident had re-suited from negligence on the part of Olivier and praying for judgments against said Transcontinental Insurance Company as follows: In favor of Mrs. Olivier for $7,645; in favor of the minor, Peggy Ann Olivier, $500; in favor of the minor Ruth Mathilda Olivier, $500; in favor of the minor, Harold A. Olivier, Jr., $1,000.
Transcontinental Insurance Company denied any negligence on the part of Olivier and, in the alternative that it should appear that there was any such negligence and that therefore there was any liability in it as a result of its being the liability insurer of Olivier, it averred that each of the claimants had been paid in full for such damage or loss as each had sustained and that therefore there remained no claim in any one of them.
The said Transcontinental Insurance Company specially averred that in effecting the said settlements, (totalling $1,000) which were erroneously averred to have totaled $1,200, there had been subterfuge in that the damage sustained by Olivier had not amounted to $712, which was stated as representing the cost of repairing that car, and that in reality the settlement agreements contemplated that of the total amount which the Olivier family had received, considerably more than $50 had been intended for the use of Mrs. Olivier and for the use of each of the three children, and that therefore each had been paid in full for such damage or loss as each had sustained.
After an extended trial there was judgment in favor of defendant, Transcontinental Insurance Company, the District Judge stating that the “plaintiffs herein have been paid in full for the injuries they received through the medium of a compromise entered into by and between the plaintiffs herein and the insurer of the said Joseph Breaux, that is, the Traders & General Insurance Company.”
The District Judge thus found it unnecessary to determine whether Olivier had been at fault since he found that, re *704 gardless of where the fault lay, Mrs. Olivier and each of the children had been paid in full by Traders & General Insurance Company.
From this judgment Mrs. Olivier, in her own behalf, and Mr. Olivier, on behalf of each of the children, have appealed.
We agree with the District Judge that this is an unusual proceeding, and we also agree that it “is permissible under the laws of the State of Louisiana.” It is unusual in that the father, on behalf of his minor children, is suing his own insurer. However, he is appearing not in his individual capacity, but solely in the capacity of representative of his minor children, and, in that capacity, is claiming on their behalf damages for injuries alleged to have been caused by the negligence of the holder of a liability insurance policy under which the insurer is liable directly to any one who may be injured by negligence of the insured. If, in those circumstances, the father, as representative of his children, may not present the claims of the children then no one may and by that peculiar circumstance the children are denied rights to which they are entitled and the insurer is unjustly relieved of the liability which it assumed in the issuance of the contract of insurance.
Since the District Judge decided that each of the insured persons has been fully compensated for losses and injuries sustained, it is best that we examine that phase of the matter before inquiring into the fault vel non of Olivier.
In the first place, we must examine the contention of the Transcontinental Insurance Company that the $50 which was paid to each of the present claimants does not represent the true amount which each actually received. This is based on the further contention that, though the settlement with Olivier himself is supposed to have included $712 as the cost of repairing his car, the truth is that the car was not worth ánywhere near that amount and that he therefore actually received some part of that amount, not because of the damage to his car, but because of the injury sustained by the other members of his family, and that the settlement was made in that way so that it would seem that the amounts paid to each of the other members of his family was small and that accordingly each might have some right to claim some additional amount from Transcontinental Insurance Company,
It is true that Olivier, in answer to a question propounded by counsel for Transcontinental Insurance Company, stated that the “book value” of his car might not have been more than $600, but he added that it was worth more than that to him.
It is also true that the evidence shows conclusively that the Traders & General Insurance Company exhibited little interest in the question of how the total amount paid in settlement should be divided and agreed to pay $1,000 as a globo settlement of all of the claims, and it is also true that the $1,000 which was paid as a result of the several compromises and sub-rogations, has never been distributed but is held in trust by counsel for plaintiffs. Nevertheless, we do not feel that the record justifies the conclusion that there was any such conspiracy which would result in a mulcting of the Transcontinental Insurance Company for losses and injuries for which payment had already been made.
We thus pass to a consideration of the question of whether the amounts shown in the several settlement agreements represent adequate compensation for the injuries of Mrs. Olivier and of the three children.
We first note that none of the injuries could have been particularly serious for the bill of the doctor for treating all five of the injured persons amounted to only $25 and each treatment required only one visit to the doctor. The injuries to the children were of such slight importance *705 that we shall not discuss them in detail and shall merely state that $50 seems to have been adequate in each case.
In the case of Mrs. Olivier $50 does not appear adequate. She was two months pregnant and possibly there was some slight fear that there might be some detrimental effect upon this pregnancy. However, it is very evident from the testimony of the doctor who attended her that there was very little fear on his part of such a result. Mrs. Olivier says that she found it necessary to remain in bed for several days, but from the testimony of the doctor we think that there was little necessity for this. All in all we believe that, while $50 was not quite adequate, an additional amount of $200 should sufficiently compensate her.
We have not overlooked the fact that in Valence v. Louisiana Power & Light Co., La.App., 50 So.2d 847, 854, we allowed $750 to a plaintiff “as compensation for her mental anguish and worry over the fear that the unborn foetus might have been injured or that there might have-been an abortion.” Nor have we overlooked the fact that, as a result of the many cases cited in that decision, from $600 to $750 has been accepted as proper award for real fear of a possible abortion. However, in each of the cases cited there was real reason for that fear, whereas here we are convinced from the testimony of the doctor and of Mrs. Olivier herself that there was no justification for serious fear on that ground.
Mrs. Olivier, of course, is not entitled to anything more unless it appears that Olivier was at fault and that this fault on his part contributed to the result, and we thus return to a consideration of the facts as shown by the record.
Olivier says that, as he turned to his right to go under the traffic light and then to turn left on Barataría Boulevard, he noticed that the traffic light was red and that therefore he waited for it to become favorable. And while he says that he had completed the turn and had proceeded some distance along Barataría Boulevard before his car was struck by the Breaux car, we think that the truth is that he was struck almost directly under the traffic light and that consequently he had barely completed the turn. This would mean that, when he drove out into the boulevard, he must have been directly in the path of the oncoming Breaux car and that he should have seen that it was coming and that he could not complete the turn in time to avoid being struck by it. This fault on his part contributed to the accident and rendered his insurer liable solidarily with the insurer of Breaux.
It is conceded that the amount received by Mrs. Olivier from the insurer of Breaux must be credited against the amount due for her total damage. Therefore, since she has received $50, and we feel that $250 will compensate her for her total damage, she is entitled to judgment against the Transcontinental Insurance Company in the sum of $200.
We think that, under the circumstances, Transcontinental Insurance Company should bear all costs.
The judgment appealed from, insofar as it dismisses the suit of Mrs. Olivier, is annulled, avoided and reversed, and there is now judgment in favor of Mrs. Frances R. Olivier and against Transcontinental Insurance Company in the sum of $200, with legal interest from judicial demand, Transcontinental Insurance Company to pay all costs; in all other respects the judgment appealed from is affirmed.
Reversed in part; affirmed in part.