539 So.2d 849 (1989)
Mable LeJEUNE, Individually and as Succession Representative of Estate of Rayo LeJeune, Plaintiff-Respondent,
v.
RAYNE BRANCH HOSPITAL, Defendant-Relator.
No. W88-890.
Court of Appeal of Louisiana, Third Circuit.
February 10, 1989.
Writ Granted April 14, 1989.
*850 Watson, Blanche, Wilson & Posner, William J. Mitchell, Jr., Baton Rouge, for defendant-relator.
Patrick L. Michot, Thomas E. Guilbeau, Lafayette, for plaintiff-respondent.
Before DOMENGEAUX, STOKER and DOUCET, JJ.
STOKER, Judge.
Does Louisiana now recognize a cause of action for mental distress experienced by a claimant resulting from injury sustained by a third person?
In the past generally, Louisiana has not recognized such an action; but we conclude that the issue should be reexamined. A typical statement of the rule by Louisiana courts is that one may not recover for mental suffering resulting from personal injuries, short of death, suffered by another.[1] Whether this is still the law is the issue before us. Dissatisfaction with the general rule has often been expressed, and the courts of this state have frequently fashioned exceptions where they found facts justifying avoidance of the general rule. The general rule dates back to 1855 when the Louisiana Supreme Court decided Black v. Carrollton R.R. Co., 10 La.Ann. 33 (1855). Developments in the law of torts, particularly in recent years, lead us to believe that the Black rule should be discarded, if it has not already been abandoned. We are encouraged to believe this by the discussion of legal principles in Pitre v. Opelousas General Hosp., 530 So.2d 1151 (La.1988). The Court of Appeal for the Fourth Circuit of this state recently held that a petition filed by parents stated a cause of action for mental anguish or suffering sustained by them as a result of physical or psychological injuries to their son. Bishop v. Callais, 533 So.2d 121 (La. App. 4th Cir.1988), writ denied, 536 So.2d 1214 (La.1989). We are aware that the denial of an application for relief through extraordinary writ should be accorded no particular significance. That being the case, we add our views to those of the Fourth Circuit and feel justified in giving full treatment to the issue presented in this case.
This matter is before us on a supervisory writ. It is an action for damages allegedly caused by rat bites sustained by plaintiff's husband, now deceased. The alleged attack on the decedent occurred while he was staying in the Rayne Branch Hospital following a severe stroke. Plaintiff does not allege that her husband died as a result of the rat bites.
Plaintiff's petition sets forth causes of action on behalf of her husband in her capacity as his succession representative and on her own behalf. Plaintiff's own cause of action is for the recovery of damages for the mental anguish she purportedly suffered as a result of the rat bites sustained by her husband.
In response to plaintiff's petition for damages, defendant, Rayne Branch Hospital, filed a peremptory exception of no cause of action, asserting that Louisiana law does not recognize a cause of action for the recovery of damages for mental anguish resulting from physical injuries sustained by another. After a hearing, the trial court overruled defendant's exception. Defendant applied to this court for a supervisory writ which was granted. The matter was set for submission with full briefing and oral argument. We affirm the trial court's holding.

APPROACH TO THE QUESTION
The recovery of damages for the mental anguish suffered by a plaintiff as a result of physical injuries to another has been a *851 much disputed issue. Louisiana's policy approach to the issue has been criticized and not consistently followed by the jurisprudence. Therefore, we have considered the issue at length with separate discussions of the Black rule, which was laid down by the Supreme Court in 1855, the "maverick" cases which have declined to follow the Black rule, the appellate court cases which have followed but criticized the Black rule, the "dead body cases" which permit recovery of damages for mental anguish caused by the mishandling of a person's remains, the Supreme Court's recent duty-risk discussion in the Pitre case, the dissatisfaction with the Black rule expressed by the commentators, common law approaches to the issue and, finally, the elimination of the "flood of litigation" policy reason by amendment of LSA-C.C. art. 2315.

THE BLACK RULE
Damages for mental anguish are recoverable in a wrongful death action, LSA-C. C. art. 2315.2 and Forest v. State, D.O. T.D., 483 So.2d 1313 (La.App.3d Cir.), writ granted, 486 So.2d 743 (La.), affirmed, 493 So.2d 563 (La.1986), and in an action to recover damages to property, Fontenot v. Magnolia Petr. Co., 227 La. 866, 80 So.2d 845 (1955). However, a long line of jurisprudence has, with some deviations, traditionally barred the recovery of damages for the mental anguish of a person whose loved one is wrongfully injured. This rule stems from the 1855 Supreme Court case of Black v. Carrollton R.R. Co., 10 La. Ann. 33 (1855), which held that such damages are punitive in nature and therefore could not be awarded. In Black, the plaintiff sued for damages resulting to himself by reason of injuries sustained by his minor son in a railroad accident. In considering the injury to the plaintiff's feelings, the majority opinion, as written by Justice Buchanan, stated:
"The jury seems to have taken into view the shock to the parental feelings and the solicitude and anxiety of the parents of the sufferer, which must be supposed to have been the consequences of the grave injuries and protracted convalescence of their child, and which are declared upon by plaintiff as elements of damage. But we are not disposed to admit the soundness of a doctrine which would extend vindictive damages to a case like the present.
We carefully notice the distinction between the immediate sufferer in a railroad accident and a relative of the sufferer, however near may be that relative. * * * It may well be supposed that the mutilation of a healthy and promising boy, the pride of his parents, and the example of his schoolmates, such as the petition describes the plaintiff's son, has excited feelings of the keenest anguish in the breasts of his relatives, and of the most painful sympathy in many who were not endeared to him by ties of kindred. But we do not understand the object of the law to be the punishment of an offending party for having been the cause of an unpleasant emotion in the family and acquaintances of the party offended; and this in the form of a pecuniary compensation to the relative or friend thus affected. Were such the law, the consequence of an offense to the offender would be greater or less, in proportion to the larger or smaller circle of friends of him who had been offended."
Chief Justice Ogden dissented, finding that the purpose of LSA-C.C. art. 2315 is reparation through a just and adequate compensation for any type of damage to a plaintiff, whether in mind, body or estate, and that no type of reparation for actual damage caused by the fault of the defendant should be considered punitive.
Justice Slidell, in a dissent, stated that although compensation for pecuniary expenses should be recoverable, he agreed with the majority that damages for mental suffering should not:
"I do not think the father's mental suffering should be an element in the assessment of damages in his favor. This would be extending, without a sufficient legal ground, the exception to the general rule that actions for injury to the person are personal. Moreover, let us *852 bear in mind the difficulty which would result from recognizing the mental suffering of the third party as an element of damage. Where is any but an arbitrary limit to be found in extending its benefit? Could an action for damages on that ground, if allowed to the father, be refused to the mother, the brother, the sister? The subject was recently considered in England, in an action by a widow for damages by reason of the killing of her husband, brought under the statute of 9 and 10 Victoria, by which, in such actions, it was enacted that: "The jury may give such damages as they may think proportional to the injury resulting from such death, to the parties, respectively, for whose use such actions shall be brought.' The rule said to be adopted in Scotland, of giving a solatium, for the mental suffering, was held to be inapplicable to the English statute, broad and general as its language is; and the impossibility of apportioning the damages among the parties entitled to receive them, if they were based upon the mental suffering of the parties was greatly relied upon by the court as indicating the intention of the Legislature to confine the damages to the actual pecuniary loss of the sufferers. See Law & Equity Rep. 442, Blake v. Midland Railroad Company."
It is from the language of this dissent, apparently, which cites the common law of England and Scotland as its authority, that the present policy reasons for disallowing damages for mental anguish resulting from injury to another stem. The often quoted case of McKey v. Dow Chemical Co., Inc., 295 So.2d 516, at 518 (La.App. 1st Cir.1974), succinctly sets forth the policy reasons behind the Black rule:
"It suffices to state it is based in part on the practicality of justice which protects a tort-feasor from the unreasonable demands of myriads of claimants who sustain no personal injury as a result of the tort. The rationale of this premise is the avoidance of opening a field of litigation which will flood the courts with actions in which practical justice cannot be meted out to both plaintiff and defendant alike. Another basic premise of the rule is that, under such circumstances, there is no breach of a legal duty toward the party claiming damages."
This language resembles Justice Slidell's dissent in Black far more than it does the majority's holding.
The Supreme Court affirmed the Black rule in the subsequent cases of Sperier v. Ott, 116 La. 1087, 41 So. 323 (1906); Brinkman v. St. Landry Cotton Oil Co., 118 La. 835, 43 So. 458 (1907); and Kaufman v. Clark, 141 La. 316, 75 So. 65 (1917). Since 1917, the Supreme Court has not directly dealt with the issue, but has consistently denied writs in a long line of appellate court cases which have followed the rule up to the present.

"MAVERICK" CASES
The Black rule has not been consistently followed. There have been a few cases in which, to serve the ends of justice, the courts have awarded compensation for very real and apparent mental anguish by simply ignoring the rule or by "finding" a breach of some duty to the plaintiff which resulted in the plaintiff's mental anguish.
An anomaly created by the jurisprudence has been the recovery of damages for mental anxiety over possible injuries to, or abortion of, an unborn fetus, while no damages are recoverable for mental anxiety over actual injury to a live baby. Initially, damages for anxiety over an unborn fetus were only recoverable by the mother, but recently the jurisprudence has held that the father is also entitled to damages. The early case of Valence v. Louisiana Power & Light Co., 50 So.2d 847 (La.App.Orl.Cir. 1951), which did award damages for anxiety over an unborn fetus to the father, was regarded by the majority of cases as a maverick which was counter to the prevailing jurisprudence.
For the "maverick" cases, see: Valence v. Louisiana Power & Light Co., supra (damages awarded to father for mental anguish and worry over possible injuries to or abortion of plaintiff's unborn fetus); Champagne v. Hearty, 76 So.2d 453 (La. *853 App.Orl.Cir.1954) (mother received damages for anxiety over possible harm to her unborn child); Jordan v. Fidelity & Casualty Co. of New York. 90 So.2d 531 (La. App.2d Cir.1956) (mental anguish damages awarded to father for possible injury to unborn child); Skorlich v. East Jefferson General Hospital, 478 So.2d 916 (La.App. 5th Cir.1985) (father and mother held to each have a cause of action for damages for mental anguish caused by the negligent injury to their child during delivery).
For other cases awarding mental anguish damages for possible injury to, or abortion of, an unborn fetus, see also: Olivier v. Transcontinental Ins. Co., 93 So.2d 701 (La.App.Orl.Cir.1957); Wiley v. Sutphin, 108 So.2d 256 (La.App.2d Cir.1958); Nomey v. Great American Ind. Co., 121 So.2d 763 (La.App.2d Cir.1960); Rogillio v. Cazedessus, 122 So.2d 897 (La.App. 1st Cir.1960); Deshotels v. United States Fire Ins. Co., 132 So.2d 504 (La.App.3d Cir.1961); Davis v. New York Underwriters Ins. Co., 141 So.2d 673 (La.App. 1st Cir.1962); Bee v. Liberty Mut. Ins. Co., 165 So.2d 73 (La. App. 4th Cir.1964); Warr v. Kemp, 208 So.2d 570 (La.App.3d Cir.1968); Wheeler v. Simonton, 215 So.2d 359 (La.App.2d Cir. 1968); Buckelew v. Plunkett, 242 So.2d 372 (La.App.2d Cir.1970); Jolivette v. Safeco Ins. Co., 379 So.2d 1213 (La.App.3d Cir. 1980).
Two other "maverick" cases are Holland v. St. Paul Mercury Ins. Co., 135 So.2d 145 (La.App. 1st Cir.1961) and Vidrine v. Government Employees Ins. Co., 528 So. 2d 765 (La.App.3d Cir.), writ denied, 532 So.2d 156 (La.1988). In Holland, parents were awarded damages for mental pain and suffering caused by the exterminator's failure to swiftly and precisely divulge the contents of the rat poison which plaintiffs' son ingested. Many subsequent cases have attempted to distinguish Holland on the basis that the court's holding was based on a breach of contract. However, while recognizing a breach of a contractual duty by the defendant, the court founded its holding in tort: "The tort committed by defendant insofar as the claims of present plaintiffs are concerned consisted of defendant's failure to know and understand its dangerous products and to be able within reasonable delay to advise plaintiffs of the precise nature and content thereof." The court found that the existence of this legal duty, and its breach by defendant, distinguished the case from other cases which refused to allow damages for the mental pain and anguish occasioned by injury to another. The damages awarded in Holland, however, were to compensate the plaintiffs for their mental suffering over their son's condition occasioned by defendant's breach of duty. It is difficult to conceive what mental suffering could have reasonably been experienced by the mere breach of the duty had not plaintiffs' son eaten some of the poison. We believe, as do many commentators, that the Holland case stands for the proposition that damages for mental anguish occasioned by injury to another are recoverable.
In Vidrine, damages for mental anguish were awarded to an eight-year-old child who witnessed her mother's severe injuries and suffering in an automobile accident. Without referring to Black, supra, or any of the "maverick" jurisprudence, the court based its award on the rationale of a wrongful death case which awarded damages for mental anguish to a minor child who witnessed the death of his father in a vehicular accident. The court found that "it would be ludicrous to say that she did not suffer mental anguish in seeing her mother injured."

DISSATISFACTION OF THE COURTS WITH THE BLACK RULE
The great majority of the cases dealing with the issue of mental anguish sustained by one person due to the negligent injuring of another have adhered to the Black rule on the basis of consistent writ denials by the Supreme Court in cases involving the issue. However, in many cases the courts have expressed their dissatisfaction with the inherent unfairness of the blanket rule. Most often pointed out by the courts has been the anomaly in the jurisprudence that, although a person may recover damages for mental anguish resulting from damage to his property, he may not recover damages *854 for mental anguish resulting from injury to another person. In Cambrice v. Fern Supply Co., Inc., 285 So.2d 863, at 866 (La.App. 4th Cir.1973), the court stated its position as follows:
"Thus apparently the Louisiana law is that mental suffering from injury to one's property is compensable, and mental suffering from injury to one's child is not. Here, for example, the mother's grief over the bloodied and torn clothing of her son might be compensable, but her grief over his bloodied and torn leg is not. However, while this appears incongruous, the latest supreme court expression we find is its refusal of writs in Newman [v. City of Baton Rouge, 260 So.2d 52 (La.App.1972)] supra, and we therefore refuse compensation for mental suffering for injury to one's child."
The court in Brauninger v. Ducote, 381 So.2d 1246, at 1248 (La.App. 4th Cir.1979), quoted Cambrice, supra, and further stated:
"Indeed, the inconsistency in the historical position of our courts is difficult to logically explain. See Stone, Ferdinand F., `La. Tort Doctrine: Emotional Distress Occasioned by Another's Peril,' 48 Tulane Law Review 782 (1974); Stone, Ferdinand F., La. Civil Law Treatise, `Tort Doctrine', Vol. 12, Sections 170-171, (1977). However, because of the denial of writ applications by the Louisiana Supreme Court in those cases where awards for mental anguish, or mental stress, or mental suffering have been held not to be compensable, we cannot disregard the Supreme Court's apparent signal. We use the word `apparent' because we have found no recent Supreme Court cases which have addressed the issue, except, inferentially, by the denial of writ applications.
Perhaps in an appropriate case the Supreme Court will reconsider the problem and either reaffirm the holdings in Black v. Carrollton Railroad Co., supra, and Sperier v. Ott, supra, or repudiate those cases and the long line of appellate decisions. It would appear that consistency would require either no recovery for emotional stress for one's property damage or for one's child, or recovery in both cases. We might add that it would be far easier to explain if our courts were to recognize damages for emotional stress resulting from injury to one's child but not to one's property, rather than the converse, as existing under the present state of our jurisprudence."
In a concurrence to Brauninger, (then) Judge Lemmon stated:
"The principal argument against allowing damages for emotional distress caused by injury or peril inflicted upon another person is that many false claims will be presented to the courts. Nevertheless, this problem (like most legal problems) is one of where to draw the line, and the drawing of lines must be done rationally.
It is far more rational to compensate only the carefully scrutinized valid claims of tort-caused emotional distress than to deny compensation in all cases because some (or even most) claims are not valid. The difficulty of the problem does not warrant the unjustness of the present solution. Indeed, the present solution disregards the very essence of the judicial process.
Just as the courts have responded to the challenge of just adjudication of difficult claims of traumatic neuroses, the court should accept and meet the challenge of these difficult but often real claims of emotional damages."
Judge Laborde's dissent in Lanham v. Woodward, Wight & Co., Ltd., 386 So.2d 131, at 135 (La.App.3d Cir.), writ refused, 392 So.2d 668 (La.1980), argues that Black is no longer controlling to the issue:
"The majority argues that Black v. Carrollton Railroad Company, 10 La. Ann. 33, 25 L.R.A. 28 (La.1855), is controlling and denies recovery. I disagree. First, factually Black involved damages for anxiety and shock whereas this case involves those elements as well as loss of love, affection and guidance, and the psychological impact on young children of seeing their mother a virtual vegetable. Second, the court in Black considered damages for anxiety and shock to be *855 exemplary or punitive damages and therefore not allowable under Louisiana law. The court later said, `But it is now well settled that damages for mental anguish or suffering are actual rather than exemplary or punitary.' McGee v. Yazoo & M.V.R. Co., 19 So.2d 21, 206 La. 121 (La.1944) citing Bourg v. Brownell-Drews Lumber Co., 45 So. 972, 120 La. 1009 (La.1908) and Byrne & Co. v. Gardner & Co., 33 La.Ann. 6 (La.1881). Therefore the rationale, if not the holding, in Black has been impliedly overruled. Third, the majority opinion was signed by only two justices out of five. Therefore, we are not bound by the decision. Chaney v. Travelers Insurance Company, 249 So.2d 181, 259 La. 1 (1971).
Civil Code Art. 2315 provides for this cause of action. I see no alternative interpretation of the first paragraph.
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."
In Waldrop v. Vistron Corp., 391 So.2d 1274 (La.App. 1st Cir.), writ refused, 394 So.2d 281 (La.1980), the Court of Appeal for the First Circuit stated its disagreement with the Black rule:
"The inconsistencies and basic unfairness of this long line of jurisprudence were most recently examined by our brethren of the Fourth Circuit in Brauninger v. Ducote, 381 So.2d 1246 (La.App. 4th Cir.1979). In scholarly fashion, Judge Gulotta reviewed the law and its faults and pointed up the need for change.
With all due respect for precedent, we believe the line of cases beginning with Black v. Carrollton Railroad Co., and ending with Brauninger v. Ducote, supra, to be wrong. This is particularly so in view of Art. 1, Section 22 of the Louisiana Constitution."
* * * * * *
"Because of the long line of jurisprudence and because our Supreme Court has had many opportunities to change the law but has failed to do so, we reluctantly must reject Mrs. Waldrop's claims as not being recoverable under current Louisiana law.5"
* * * * * *
"5. The difficulty in determining who should recover for mental anguish due to injury to a third person should not be a basis for refusing recovery where it is just. We quote with approval from Justice (then Judge) Lemmon's concurrence in Brauninger. ..."
Following a well-reasoned and thorough analysis of the policy considerations behind the Black rule, the court in Blackwell v. Oser, 436 So.2d 1293, at 1298 (La.App. 4th Cir.), writ denied, 442 So.2d 453 (La.1983), concluded:
"Thus we arrive at the fundamental unsoundness of the doctrine announced in Black: inasmuch as the policy reasons underlying the rule are now highly questionable, at least as to some classes of plaintiffs, such an absolute bar obliterates the importance of `foreseeability of harm', and thus does violence to our long-held notion of `duty.'"
Finally, in Kolder v. State Farm Ins. Co., 520 So.2d 960 (La.App.3d Cir.1987), in footnote 1 at page 963, Chief Judge Domengeaux opined:
"Although in the case sub judice we again apply the established jurisprudence, it is the author's opinion that damages should be awarded for the mental anguish one experiences over a third party's injury or peril. It is unfair and illogical that damages are recoverable for mental anguish over damage to one's property but damages are denied for what can be even more severe mental anguish over injury or peril to a loved one. La.C.C. arts. 2315 f.f. provide no barrier to such an award. See 12 F. Stone, Louisiana Civil Law Treatise, § 177 (1977). As discussed by Professor Stone, the determination of eligibility of such an award should be based on whether the claimant has proven, by a preponderance of the evidence, that the relationship between the victim and the one suffering the shock is of such a rapport as to make the shock and trauma understandable. Since our Supreme Court has not addressed this issue for over eighty *856 years, now may be an opportune time for the High Court to re-evaluate the logic of this jurisprudential rule as well as its inequities."
See also Gibbons v. Orleans Parish School Board, 391 So.2d 976 (La.App. 4th Cir. 1980).
This writer agrees with the opinions expressed in the above cited cases and noted the need for reexamination of the rule seven years ago in Hardy v. State, Dept. of Highways, 412 So.2d 208, at 214, note 5 (La.App.3d Cir.), writs denied, 414 So.2d 305, 381 (La.1982).

DEAD BODY CASES
The jurisprudence has also produced the anomaly that, although a person may not recover damages for mental sufferings caused by negligent injury to another live person, damages may be recovered for negligent "injury" to a dead body. Some courts have founded the theory of recovery on a duty owed to the relatives of the deceased not to damage the body. See Blanchard v. Brawley, 75 So.2d 891 (La. App. 1st Cir.1954) (held damages for mental pain and anguish may be awarded to near relatives for the negligent mutilation of the deceased's body under LSA-C.C. art. 2315), Shelmire v. Linton, 343 So.2d 301 (La.App. 1st Cir.1977) (mental anguish damages were awarded to two people who saw the remains of their parents in an overturned vault and to a descendant who knew of the accident but did not view the remains), and cases cited therein; Fortuna v. St. Bernard Memorial Gardens, Inc., 529 So.2d 883 (La.App. 4th Cir.1988) (cites and applies holding of Blanchard v. Brawley).

THE PITRE CASE
In Pitre v. Opelousas General Hospital, 530 So.2d 1151 (La.1988), the Supreme Court held, after a duty-risk analysis under LSA-C.C. art. 2315, that the plaintiff (parents) could not recover damages for their emotional distress caused by their child's deformity (albinism) because they had not shown that the doctor could have reasonably foreseen an unreasonable risk of a birth defect in that case. However, the plaintiffs were permitted an opportunity to amend their petition to remove the deficiency. The court based its analysis of the issue on whether the doctor's negligence was a legal cause of the plaintiffs' damage and, if so, the kind and the extent of damage to be attributed to the physician. The language of this holding seems to leave the door open for recovery of damages for mental anguish due to injury to the plaintiffs' child under a duty-risk analysis.
This interpretation of the holding in Pitre has recently been reinforced by the Supreme Court's denial of writs in Bishop v. Callais, 533 So.2d 121 (La.App. 4th Cir. 1988), writ denied, 536 So.2d 1214 (La. 1989). In Bishop, parents brought an action to recover damages for the mental anguish and suffering they sustained as a result of the physical or psychological injuries sustained by their minor son, who was allegedly sexually assaulted while confined for treatment in a psychiatric hospital. The court of appeal reversed the trial court's judgment sustaining defendants' no cause of action and held that the parents' petition stated a cause of action for mental anguish damages through the negligent care and treatment of their minor son. The Fourth Circuit stated that, instead of attempting to place a "tort" or "contract" label on cases in order to determine if recovery is permissible, the preferable approach is to utilize fact-pleading and apply the civilian principles of duty-risk to resolve the issue. Therefore, the court held that it was reasonable to conclude that a duty to the parents may exist and that the factual scenario alleged stated a cause of action. The Supreme Court denied writ applications by the defendants (the hospital, its insurer, its administrator and an employee).
The Supreme Court, through its holding in Pitre and its denial of writ applications in Bishop, seems to tacitly approve an abandonment of the Black rule in favor of a civilian duty-risk analysis.

DISSATISFACTION OF THE COMMENTATORS
Many commentators believe that the rule laid down in 1855 by the Supreme Court in *857 Black v. Carrollton R.R. Co., supra, is in need of revision.
The case of Holland v. St. Paul Mercury Ins. Co., supra, was discussed in Professor J. Denson Smith's article, "Conventional ObligationsDamages for Mental Suffering," 23 La.L.Rev. 275, at 290 (1960):
"More basically, the statement that a separate duty is owed in one sense assumes the matter to be decided. If there is any validity to traditional tort doctrine, recovery will lie whenever a duty has been owed to plaintiff, that duty has been breached, and damage to plaintiff has been proximately caused thereby. The statement that a duty exists is often, as would appear to be true in the instant case, merely another way of saying that liability will be imposed. There is nothing wrong with saying that defendant owed plaintiffs a duty here to be prompt and accurate in divulging information about the ingredients in the poisons used. But it ought to be emphasized that finding a separate duty is not a reason for liability; it is but another way of stating that liability will ensue. If the existence of a separate duty is to be counted as a reason for imposing liability, then why not impose a duty upon the tortfeasor in cases like Black v. The Carrollton R.R.? Would it not be entirely plausible to state that the defendant in such a case owed a duty of due care to the injured child, based upon the reasonable foreseeability of injury to persons from negligent operation of the railway, and an entirely separate duty of due care to plaintiff-father, based upon the reasonable foreseeability of mental injury to parents who witness their children injured by a negligently-operated railway? It is true that in the instant case the physical actions which would be necessary in order for defendants to discharge the duty to the parents are different from those which would be involved in discharging the duty to the child. As to the parents, defendants are required to know and promptly divulge the ingredients of the poisons used; as to the child, to use due care in administering the poison. But is there any reason why this difference should be of significance?
Similar difficulties present themselves when the problem is put in terms of proximate causation.38 This approach would in the Carrollton Railroad case involve assuming the existence of a duty of due care, and in asking the question whether the injuries the father sustained were so remote from the act of negligence or so unforeseeable as not to be the proximate result thereof. In the instant case, the same approach would involve assuming the existence of a duty of due care in handling and usage of poisons, which would include reasonable knowledge of their ingredients, and in asking the question whether the injury sustained by the parents as the result of a failure to discharge that duty properly was without the realm of foreseeability to such an extent as not to be the proximate result of the breach. Here, again, the same anomalyis the one less foreseeable or more remote than the other?
Despite these difficulties of rationale, the policy reason for extending liability in the Holland case is easily discovered. The primary reasons underlying holdings like that in the Carrollton Railroad case are fear on the part of the courts that proof of genuineness of the harm will be troublesome and that to allow recovery in such cases would be unduly provocative of litigation. The court was careful to point out that a duty restricted to the father and mother would hardly be subject to these criticisms. Further, the fact that the parties involved in the Holland case were in a position of reliance upon defendant's implied warranty of due care is an added safeguard against the danger of overly extending the rule of the case." This article is also published in W.S. Malone & L. Guerry, Studies in Louisiana Torts Law 43 (1970). See also, Note, "Mesa v. Burke: Mental Anguish Damages for Witnessing Injury to a Close Relation," 48 La.L.Rev. 1005 (1988).
In F.F. Stone, 12 Louisiana Civil Law Treatise: Tort Doctrine § 170, at 217 (1977), it was commented that the refusal of the courts to award damages for the *858 emotional distress occasioned by another's injury brought into the open this distinction: "... kill the child and compensate the parents: mangle the child, however badly, and no damages allowed for their mental anguish. By 1940, the same result was applied to interspousal anguish where such was considered to be in the nature of the loss of a wife's society and consortium."
In discussing factors to be examined in reevaluating Black v. Carrollton R.R. Co., supra, Stone makes the following points:
"It is true that the cause of action for the injuries to the victim belong to him or his representative, but the cause of action for the emotional distress of the third person is a separate cause of action though arising out of the same event and should be granted or refused on its own merits. The Black decision in this respect cannot be supported on principles of logic, experience or justice.
* * * * * *
"Further, it has been one of the merits of the Cardozoan `ambit of risk' theory that courts were free to place whomsoever they wished within the magic circle, so that it might include rescuers and remote, but injured, consumers.
* * * * * *
"That to permit others than the one imperilled to recover for nervous shock or mental distress would be to open up a Pandora's box of litigation with the result that every spectator who saw an accident in person or by means of television would flood the court with claims, many of which might be false. This cry has been raised against every innovation in tort litigation. It is an insult to the whole judicial process dedicated as it is to the winnowing of true claims from false ones. To refuse to entertain valid claims because others might be fraudulently brought is an argument of expediency rather than of justice. Courts have already shown that they are quite capable of marking out bounds."
* * * * * *
"It is also difficult to justify the awarding of damages in a wrongful death action to a surviving parent and spouse for their sorrow and grief occasioned by the death, while refusing such damages to one whose child or spouse has been rendered a `vegetable' through another's negligence. Further, it is difficult to distinguish cases where damages are awarded for anxiety over the possibility of injury to one's unborn child from cases where damages are refused even though a mother witnesses the death of her minor daughter.
It is also a strange world in which anguish damages are awarded to a boy grieving over his shot horse, or a citizen distressed by the city's action in taking her property without following the procedure required in eminent domain cases, and refused to a parent grieving over an injured child."
* * * * * *
"Finally, the argument has been made that since 1855 Louisiana has refused recovery in such instances except for the exceptional cases of Valence and Holland, which are intermediate appellate court decisions. Such an argument to precedent sounds strange in the mouth of a civil law judge and is even becoming suspect in the mouth of his common law counterpart. This argument is justified only if the original rationale upon which Black was decided remains valid and in accord with notions of justice, logic and experience."
Stone concludes that LSA-C.C. arts. 2315, 2316 and 1934, subd. 3 are clear authority for such awards, the only conditions being the reality of the damage and the fact that it was caused by the defendant's conduct.
The approach to the issue advocated by the commentators is the same as that used by the Supreme Court in Pitrea duty-risk analysis. Use of the duty-risk analysis eliminates the old policy reason for denying such mental anguish claims of there being no breach of a legal duty owed to the party claiming damages. The duty-risk analysis would narrow the field of claimants, particularly when taken together with the statutory limits on prospective claimants set *859 forth in LSA-C.C. arts. 2315 and 2315.2, which will be discussed later in this opinion.

COMMON LAW APPROACHES
Common law courts have developed other approaches to the issue besides a blanket denial of all claims: the impact rule, the zone of danger test, and the bystander proximity doctrine.
The traditional "impact rule" limits recovery of emotional damages to bystanders who are themselves physically injured by the tortfeasor's negligence. The "zone of danger" test allows recovery to bystanders for mental distress provided they were personally in the zone of danger. The "bystander proximity" doctrine, initiated in California, permits recovery if: (1) the bystander was located near the scene of the accident"physical proximity," (2) the bystander personally observed the accident "temporal proximity," and (3) the bystander is closely related to the victim"relational proximity."
The Restatement (Second) of Torts follows the traditional impact rule but creates an exception which allows recovery to bystanders who are family members of the victim and who are present when the victim is injured, even though there is no physical harm to the bystander.
See W. Prosser and W. Keeton, Torts, 5th ed., 365 (1984); Note, 48 La.L.Rev. 1005, supra.

ARTICLE 2315
LSA-C.C. art. 2315 authorizes the recovery of any damages caused by the tortfeasor. The cause of action is created in favor of the injured victim and the same categories of family members who would have had a cause of action for the wrongful death of the victim under LSA-C.C. art. 2315.2.
Article 2315 as it now stands provides
"Art. 2315. Liability for acts causing damages
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person."
Were it not for the prior jurisprudence which follows the Black rule, we might assume that the second paragraph of Article 2315 and Article 2315.2 authorize recovery by a victim's spouse, children, parents and siblings for mental distress resulting from physical injuries sustained by a third person in non-death cases. As we have shown above, recovery by such persons has been generally excluded. On the other hand, recovery of damages for mental anguish as compensatory damages have been allowed in Louisiana in many other types of factual contexts. Damages for mental anguish in wrongful death cases were provided for through specific statutory authorization in Article 2315, which is now embodied in Article 2315.2. However, many rights of action for mental anguish damages have been recognized without specific statutory authorization, and the broad provisions of the first paragraph of Article 2315 have been sufficient to cover such rights.
With the addition of the second paragraph of Article 2315, added by Act No. 202 of 1982 of the Louisiana Legislature, the right to recover mental anguish damages may be extended in non-death cases to the victim's spouse, children, parents and siblings. The right of action would be limited to these claimants under the second paragraph of Article 2315 which incorporates by reference the provisions of Article 2315.2. This application of the codal articles will eliminate the "flood of litigation" policy reason for the blanket exclusion of these damages.

CONCLUSION
For the reasons discussed, we find that the original policy reasons for a blanket denial of all claims for damages for mental anguish resulting from injury to another are no longer valid. Damages for mental anguish are no longer considered punitive. C.C. art. 2315 has imposed statutory limits *860 on the persons entitled to recover such damages and the courts can base recovery of such damages on a breach of a legal duty owed to the plaintiff under a duty-risk analysis. We hold that the plaintiff has stated a cause of action under LSA-C.C. art. 2315 and art. 2315.2 to recover damages for mental anguish resulting from any injuries to her husband caused by the defendant. The trial court correctly overruled the defendant's exception of no cause of action. Costs of this appeal are assessed to defendant.
AFFIRMED.
NOTES
[1] In this circuit an often-cited case for the proposition is McFarland v. Cathy, 349 So.2d 486 (La.App.3d Cir.1977). In McFarland, we stated: "[t]he established rule in this State is that, except in death cases, one person may not recover damages for mental pain and anguish suffered by him merely as a result of physical injuries sustained by another person."