563 So.2d 282 (1990)
Russell J. BERNARD, Individually and as natural tutor of the minor Jeffrey Michael Bernard
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, et al.
No. 88-CA-2220.
Court of Appeal of Louisiana, Fourth Circuit.
March 29, 1990.
On Rehearing May 31, 1990.
*283 A. Remy Fransen, Jr., P. Chris Christofferson, Wiedemann & Fransen, New Orleans, for plaintiffs.
Gregory J. Lannes, Jr., Louisiana Dept. of Transp. and Development (Office of Highways), Chalmette, for defendants.
Before BYRNES, ARMSTRONG and PLOTKIN, JJ.
ARMSTRONG, Judge.
Defendant, The State of Louisiana, Through the Department of Transportation and Development, appeals the trial court's judgment finding it liable to plaintiffs, Russell and Jeffrey Bernard, for damages sustained when Jeffrey Bernard was involved in an accident on its highways.
The record reflects that on April 15, 1981 at approximately 10 p.m., Jeffrey Bernard was injured when he was riding in an automobile owned by John Williams and being driven by his minor daughter, Lisa Williams, on Louisiana Highway 406, River Road, approximately one-half mile west of its intersection with Stanton Road on the lower coast of Algiers in New Orleans, Louisiana. Jeffrey Bernard was a guest *284 passenger in the right front seat of the automobile at the time.
Suit was originally filed by Russell Bernard, Jeffrey's father, since Jeffrey was a minor at the time. Jeffrey was added as a party upon reaching the age of majority. Suit was filed against the State of Louisiana, Department of Transportation and Development (Office of Highways), the City of New Orleans, and the owner and operator of the vehicle Jeffrey was riding in. The claim against the owner and operator of the vehicle has been settled. At the close of plaintiffs' case the City of New Orleans moved for a dismissal of the claim against them in the form of a directed verdict and the motion was granted.
In a bench trial the court found that Jeffrey was injured solely as a result of the dangerous nature of the highway. It awarded Russell Bernard special damages in the amount of $109,052.27 and consortium and related damages in the amount of $275,000. It awarded Jeffrey Bernard special damages in the amount of $2,696,141.00; future loss earnings in the amount of $685,567.00; and pain and suffering in the amount of $3,000,000.00. From this judgment defendant appeals.
On appeal the State of Louisiana raises four assignments of error. It argues that the trial court erred: 1) in finding that the State of Louisiana breached its duty to provide a safe roadway, to sign it properly and to maintain it adequately; 2) in finding that the driver, Lisa Williams, was not comparatively negligent and should therefore contribute to plaintiffs' damage award; 3) in awarding Russell Bernard an award for consortium and related damages; and 4) in making an excessive damage award.
In its first assignment of error, the State of Louisiana argues that it is not liable for Jeffrey Bernard's injury. The State argues that this is an old highway, built in the 1930's, and the State had no duty to upgrade it. The trial court found that the State had knowledge of the dangerous nature of the highway and is liable for its failure to properly sign and maintain it. Testimony by several residents of this area referred to this particular curve as "Deadman's Curve". You either had to slow down to an extremely slow speed or cut the curve in order to traverse it safely. If traffic was coming in the opposite direction, particularly a truck, residents testified that they would, in fact, stop. Councilman Mike Early testified that based on concerns voiced by his constituents he formed a committee jointly with Louisiana State Senator Fritz Windhorst to look into this matter but apparently nothing was ever accomplished. The State was on notice and should have done something concerning the maintenance and signing of that particular area.
The State maintains that a speed advisory sign was posted for 35mph. It argues that negligence can not be imputed from the conclusion of plaintiff's expert that the sign should have read 30 mph instead of 35 mph. A difference of 5mph is so inconsequential that one can not say it caused the accident. The State also argues that an "S" curve warning sign more accurately depicted the curve and gave the driver a better representation of the road configuration ahead. Expert testimony was offered to the contrary. The trial court found that the curve warning sign should have depicted a 90 degree curve. Chevrons could have been erected at the particular area that contained the curve. Finally the State insists that the roadway was not defective in that edge ravelling and the gradual drop off that existed did not pose an unreasonable risk. The so-called gradual drop off actually was a serious rut of 5 to 5½ inches. Expert testimony revealed that such a rut required immediate attention. The trial court ruled correctly that defendant failed to maintain the highway.
In its second assignment of error, the State argues that Lisa Williams allowed her vehicle to stray into an accident through her own negligence. It suggests that once Williams knew she was off the road she should have stopped. It argues that it was carelessness for her to continue and that is how she lost control of her car. She had a duty to keep a lookout at all times for defects.
*285 The trial court found that there was 0% comparative negligence on the part of the driver, Lisa Williams. It found that Williams was misinformed by the sign and that the speed she was travelling at the time of running off the road, in the range of 30-35 mph, was not due to her inattention. The court relied on Nunez v. Smith, 480 So.2d 383 at 387 (La.App. 4th Cir. 1985) in finding that absent prior knowledge or an opportunity to avoid the defect a motorist can presume that a highway shoulder is maintained in a reasonably safe condition and that serious harm will not result if he or she inadvertently drives onto the shoulder. We find no clear error with the trial court's finding. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); See also Canter v. Koehring Co., 283 So.2d 716 (La.1973).
In its third assignment of error, the State argues that it was manifest error for the trial court to award Russell Bernard $275,000.00 for consortium and related damages. Lost of consortium and related damages did not become law until La.C.C. article 2315 was amended on September 10, 1982. This action occurred on April 15, 1981, more than one year before the amendment. There have been several cases that have held that the right of recovery created by the 1982 amendment is prospective and not retroactive in application. See: Evans v. Cajun Elec. Power Co-op Inc., 471 So.2d 965 (La.App. 1st Cir. 1985); Abadie v. Commercial Union Ins. Co., 464 So.2d 979 (La.App. 4th Cir.1985); Ferguson v. Burkett, 454 So.2d 413 (La.App. 3d Cir. 1984).
Plaintiffs argue that this award is for mental anguish and is not controlled by the codal provision. Plaintiffs point out that the trial court's judgment is consistent with recent cases that have considered this issue. Plaintiffs rely on Bishop v. Callais, 533 So.2d 121 (La.App. 4th Cir.1988), writ denied 536 So.2d 1214 (La.1989) and LeJeune v. Rayne Branch Hospital, 539 So.2d 849 (La.App. 3d Cir.1989) writs granted 541 So.2d 861.
Since this case was heard the Louisiana Supreme Court has handed down its opinion in LeJeune. That opinion makes it very clear that the only issue the Supreme Court was addressing is whether damages for mental pain and anguish are proper in Louisiana jurisprudence. Only in a footnote does the court address consortium damages and there it clearly indicates that the 1982 codal amendment allowing consortium damages does not apply to mental pain and anguish. These two categories of damages are therefore separate and distinct.
The provision concerning recovery for damages for loss of consortium, service and society arising from injuries to another person limits the class of plaintiffs to surviving spouse and/or children; absent the foregoing, to parents; and absent parents, to brothers and sisters of the victim. See La.C.C. art 2315, second paragraph and C.C. art 2315.2. The consortium claim was added by a 1982 codal amendment which does not directly address mental pain and anguish damages.
LeJeune, id., footnote 12. The way in which this award is characterized is therefore crucial in determining whether or not it was proper. In its reasons for judgment the trial court referred to it as Russell Bernard's claim for mental anguish; loss of enjoyment of life. It also uses language such as inconvenience, aggravation and mental suffering to characterize this cause of action. More important than the precise language used by the court is its reasons.
Recognizing that the courts of Louisiana have not legally recognized such a cause of action, in a situation such as this, the Court finds that the law should be as it is in other areas; namely, loss of consortium for a wife, which is recognized by the courts as an element ofas a cause of action and compensable in damages.
The Court finds that the loss of consortium services, mental anguish of an immediate family memberin this particular case, limited to the father of the soncomes within the general meaning of Louisiana Civil Code 2315 as a reasonably expected and anticipated element of damages and cause of action when there is an incident of injury to a son where a parent will have to go out of their way in *286 excess of the moral obligation that the Louisiana law requires to properly care for that son.
The Court is not saying that every brother, sister, aunt, uncle, or cousin would be entitled to a cause of action in that regard, but finds that where there is a catastrophic injury to a child, the parents would have a cause of action if, in fact, both parents, or one parent, would have to change their lifestyle in giving up vacations, taking time off from work, remodelling their home, and denying themselves the normal things that a parent would do, especially when the child becomes of age to leave the home, giving the parent a more free life, more time for himself; all of which has been denied in this particular case, at least for the period of five and a half years, from April 15, 1981 to October 1986, when Jeffrey moved out of the home and began to live with his wife, Letitia.
In summary:
The Court finds that it is not a major step to go from a husband's injury for giving a cause of action for loss of consortium services to a wife, to go from that point and step over to the point of recognizing a cause of action for a parent who is required to careprovide extraordinary care in the situation of a catastrophic injury to a child over and above the care that would normally be expected for the care of a child from a parent. It goes beyond any moral responsibility and should, in fact, be recognized as a cause of action for that parent.
Based on these reasons it seems apparent that the trial court was awarding consortium damages and not mental anguish as the Supreme Court was addressing in the LeJeune case. We did not find any allegations of LeJeune type mental anguish in the pleadings or evidence of such in the record. Nevertheless, we will examine the circumstances of Russell Bernard's injury under the four guidelines articulated by the Supreme Court in the LeJeune opinion to determine whether it is compensable as mental anguish.
In LeJeune the Supreme Court concluded that mental pain and anguish claims arising out of injury to third persons are allowable with the following modifications and restrictions: 1) A claimant must either view the accident or injury-causing event or come upon the accident scene soon thereafter and before substantial change has occurred in the victim's condition. 2) The direct victim of the traumatic injury must suffer such harm that it can reasonably be expected that one in the claimant's position would suffer serious mental anguish from the experience. 3) The emotional distress sustained must be both serious and reasonably foreseeable to allow recovery. Serious emotional distress goes well beyond simple mental pain and anguish. Compensation for mental pain and anguish over injury to a third person should only be allowed where the emotional injury is both severe and debilitating. The court offered a non-exhaustive list of examples of serious emotional distress: neuroses, psychoses, chronic depression, phobia and shock. Paugh v. Hanks, 6 Ohio St.3d 72, 451 N.E.2d 759 (1983); Molien v. Kaiser Foundation Hospitals, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980). 4) Finally, the relationship of the claimant and the direct victim must be a close one. However, the Court left to another occasion the decision on whether to limit the class of claimants to close relatives.
Applying these guidelines to the instant case we find that Russell Bernard's injury is not compensable as mental anguish. The type of mental pain and suffering Russell Bernard sustained as a result of his son's accident is not the type of mental anguish the Court contemplated in LeJeune. Russell Bernard does not meet the first criteria under LeJeune because he did not view the accident. He testified that he was informed about the accident around midnight by the hospital where his son was taken after being injured. He went to the hospital and stayed with his son until the next morning. He did not report to the scene of the accident until 7:30 a.m. the next morning to survey the scene. He could not have seen his son until substantial *287 change had occurred to Jeffrey's condition.
We would concede that Mr. Bernard meets the second criteria. Jeffrey did suffer such harm that it could reasonably be expected that his father would suffer serious mental anguish from the experience. To his credit, there is no evidence that Russell Bernard suffered serious emotional distress. We can not say that the mental anguish he most certainly endured was either severe or debilitating. There are no allegations of neuroses, psychoses, chronic depression, phobia or shock. Therefore Russell Bernard fails to meet the third criteria in LeJeune.
Russell Bernard would easily meet the fourth criteria in LeJeune. As a biological parent to his minor son he is certainly in close relationship with Jeffrey.
It is our opinion that the award made to Russell Bernard was one for consortium and not for mental anguish. Since the law in this area is well-established, that no claims pre-dating the 1982 codal amendment are compensable, it was clear error for the trial court to make the award.
In its fourth assignment of error, the State argues that the trial court erred in awarding Jeffrey Michael Bernard $6,381,708.00 because 1) it should have used a discount rate of 8.5% as opposed to 7.5%, 2) a future earnings rate of $25,000.00 annually is excessive and 3) $3,000,000.00 for pain and suffering is excessive.
The court gave careful thought to the selection of the discount figure. It wrote:
There have been cases which have analyzed this and indicate that 1 and ½ to 2 and ½ percent is an acceptable and recognized discountnet discount factor; one of those cases being particularly the U.S. Fifth Circuit Court of Appeals, the Slater Boat case, Culvert versus Slater Boat Company, which included several decisions and gave a most complete analysis of the problem and the appropriate rate to be used. Accordingly, the Court finds that the 7 and ½ percent discount figure is appropriate because when compared to a 6 percent inflation figure rather than a 4 and ½ percent inflation figure, it produces a net discount figure in the appropriate range.
The trial court offered reasons for choosing $25,000.00 as a reasonable figure for future earnings. It considered what tradesmen around the state were earning and determined that with the skills Jeffrey would have readily been anticipated to develop and the training he could have had between 1981 and 1988, he would have been at the $25,000.00 level. It also considered his positive attitude and high motivation.
As to the award for pain and suffering the court stated that it had previously made an award in a C5-C6 level quadriplegic case. It compared the case of Jeffrey Bernard with the other case, it considered the video submitted by Jeffrey Bernard, and all other quadriplegic cases and determined that an award of $3,000,000.00 was reasonable.
We are not prepared to say that the trial court abused its discretion in this matter. It is a well-established principle in the law that the quantum in each case must be determined by considering the facts and circumstances of that case.
In the context of an award for pain and suffering, extremely great leeway must be granted to the trial fact-finder, who has been afforded the best opportunity to observe first-hand the evidence showing plaintiff's anguish and agony and the prospect of continued pain and suffering.
Hatcher v. State of Louisiana, Through the Department of Transportation, 467 So.2d 584 (La.App. 3d Cir.1985).
For the foregoing reasons, the trial court's judgment awarding $109,052.27 in special damages to Russell Bernard and $2,696,141.00 in special damages, $685,567.00 in future loss earnings, and $3,000,000.00 in pain and suffering to Jeffrey Bernard is affirmed but we reverse the award to Russell Bernard for consortium and related damages.
AFFIRMED IN PART, REVERSED IN PART.
PLOTKIN, Judge, concurs with written reasons.
*288 PLOTKIN, Judge, concurring:
I disagree with the majority's legal and factual analysis of the defendant's assignment of errors. I concur in the result only.
Before BYRNES, ARMSTRONG and PLOTKIN, JJ.
ARMSTRONG, Judge.

On Rehearing
On the application of defendant, The State of Louisiana, Through the Department of Transportation and Development, we granted rehearing for the limited purpose of reconsidering whether the award of general damages is excessive. After consideration we have decided to amend our judgment to be consistent with prior law, namely Mullet v. State Through DOTD, 539 So.2d 897 (La.App. 4th Cir.) writs denied 541 So.2d 1390 (La.1989), which retroactively applies La.R.S. 13:5106(B)(1) to limit the state's liability for general damages to $500,000.00.
The instant case is exactly on point with Mullet, supra. In Mullet the State, through the Department of Transportation and Development, appealed a $3,000,000.00 general damage award to the plaintiff, a motorcyclist who sustained severe injuries in a collision at the intersection of two highways, on the grounds that it was excessive and that La.R.S. 13:5106(B)(1) limits a general damage award against the state to $500,000.00. This court held that remedial laws such as La.R.S. 13:5106(B)(1) can be retroactively applied except when such application would operate unconstitutionally to disturb vested rights. Lott v. Haley, 370 So.2d 521, 523 (La.1979). Like Mullet there is no vested right involved here. The court in Mullet distinguished a mere expectancy of a future benefit from a vested right. At the time the Bernards filed their petition for damages on April 5, 1982 they possessed a mere expectancy. Judgment was not obtained until April of 1988, whereas Act 452 of 1985, codified at R.S. 13:5106(B)(1), became effective September 6, 1985.
Most recently, this court has had occasion to apply La.R.S. 13:5106(B)(1) to reduce a general damage award from $3,500,000.00 to $500,000.00 against a political subdivision. The accident, in which plaintiff was rendered a quadriplegic, occurred on 1983 and this court found that it was within the provisions of the statute to reduce the general damage award. Socorro v. Orleans Levee Board, et al., 561 So.2d 739 (La.App. 4th Cir.1990).
For the foregoing reasons we amend our judgment of March 29, 1990, at 282, to affirm the trial court's award of $109,052.27 in special damages to Russell Bernard and $2,696,141.00 in special damages and $685,567.00 in future loss earnings to Jeffrey Bernard. We reduce its award for pain and suffering to Jeffrey Bernard from $3,000,000.00 to $500,000.00 and we reverse the award to Russell Bernard for consortium related damages.