557 So.2d 1100 (1990)
Sonya R. CLOMON, Plaintiff-Appellee,
v.
MONROE CITY SCHOOL BOARD, Defendant-Appellant.
No. 21160-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1990.
Rehearings Denied March 29, 1990.
Writs Granted May 25, 1990.
*1101 Theus, Grisham, Davis & Leigh by Thomas G. Zentner, Jr., Monroe, for defendant-appellant.
Milton Dale Peacock, Monroe, for plaintiff-appellee.
Before MARVIN, SEXTON and NORRIS, JJ.
*1102 SEXTON, Judge.
This appeal arises from an action for damages for personal injuries, namely emotional trauma, brought by plaintiff/appellee, Sonya R. Clomon, against defendant/appellant, Monroe City School Board, which plaintiff alleges were sustained as a result of an automobile accident which occurred on October 25, 1983.
This court, in Clomon v. Monroe City School Board, 490 So.2d 691 (La.App. 2d Cir.1986), earlier overruled the exception of no cause of action asserted by the school board and its liability insurer, finding that plaintiff's petition alleged facts sufficient to state a cause of action for her mental anguish caused by her striking and killing a 4-year-old child[1] who was departing without proper assistance from a special education school bus that had temporarily stopped across the street. Upon remand, the trial court found plaintiff to be 30 percent at fault in causing the accident and the school board to be 70 percent at fault and awarded plaintiff $25,000 for her mental anguish, to be reduced by her percentage of fault to $17,500. Because we find that the trial court did not err either in its assessment of fault or in its award of damages, we affirm.
The accident occurred in front of a residence located on Powell Avenue in Monroe, Louisiana, on the west side of that road. Powell Avenue is a three-lane street with lanes for northbound and southbound traffic divided by a left hand turning lane. At approximately 3:00 p.m. on October 25, 1983, a mini-school bus owned and operated by defendant was proceeding north and had stopped in front of the aforementioned residence to deliver a 4-year-old child from the bus to his home. At about the same time, plaintiff, who had been traveling west on Louberta Street (which intersected Powell approximately one-quarter mile north of the Powell Avenue residence), had made a left turn onto Powell and had begun proceeding south. As plaintiff's vehicle passed the bus, it struck and killed the child as he was attempting to cross the street to his home.
The facts stated above are the only ones that are not disputed. In attempting to assess the fault of the parties, the trial court listened to numerous witnesses, each of whom related conflicting versions of the circumstances leading up to and following the accident. Witnesses for the plaintiff included plaintiff herself; Charles Cook, the investigating police officer; Calvin Jordan, now employed by defendant as principal of Carver Elementary School (but employed at the time of the accident as a bus driver for defendant) who was driving a bus full of children behind plaintiff's car going south on Powell Avenue; Vernon Carter, an onlooker from approximately 30 yards away who is also a friend of plaintiff's father; and Shirley Burks, a pedestrian on a street intersecting Powell directly north of the accident.[2]
Defendant's witnesses included John Stovall, who was traveling in a car behind the school bus when it stopped to let the child off; Ozell Mitchell, the bus driver of the mini-bus who had been employed by defendant for eight years; and Rosie Butler Giles,[3] the bus attendant who had been been employed by defendant for approximately six years and whose duty it was to walk the children off the bus and around the front of it and to watch until they crossed the street safely.
The trial court found the following:
Based upon all the testimony presented concerning this accident, the Court reconstructs it as follows. Ozell Mitchell drove the school bus and stopped between the left-turn and north bound lanes in front of 1900 Powell Avenue. She engaged the warning lights and stop signs. Rosie Charles [sic] exited the bus *1103 with Antonio and escorted him around the front of the bus, where she left him and returned to the bus. At this time, Sonya Clomon had turned her vehicle onto Powell Avenue and was proceeding toward the bus at a constant speed of 35 miles per hour. As Ms. Charles [sic] reentered the bus, Ms. Mitchell assumed that Antonio was safely in his home. After being left by Ms. Charles [sic], he was somewhere along the driver's side of the bus waiting to cross the street. As plaintiff approached the bus, Ms. Mitchell disengaged the warning signals and stop signs and moved ahead slightly. Then plaintiff passed the front of the bus and struck Antonio, who had almost crossed the street. Ms. Mitchell then stopped the bus, and the warning lights and stop signs were again in operation.
It is the plaintiff's theory that Antonio was left off the bus by himself, and that he went behind the school bus. This is supported only by the testimony of Ms. Burks. Both Mitchell and Charles [sic] were qualified and experienced people. The Court cannot really believe the assertion that Antonio was allowed to exit the bus by himself. On the other hand, the Court cannot accept the testimony of Charles [sic], that she saw Antonio run safely across Powell Avenue.
Plaintiff was aware of the presence of the bus, but nothing else, because she did not see Ms. Charles [sic] or Antonio before the accident. The Court takes judicial notice of the fact that a motor vehicle travels 51.33 feet per second, at a speed of 35 miles per hour. The distance between the Louberta Street intersection and 1900 Powell is ¼ mile, or 1,320 feet. Plaintiff would have reached the point of impact in 30 seconds or less. Accordingly, accepting her statement that the bus began moving 20 to 30 seconds after she turned onto Powell Avenue, would place her within a very short distance from the bus.
. . . .
After considering all of the testimony, the Court is convinced that the evidence establishes that negligence and carelessness on the part of Ms. Mitchell, Ms. Charles [sic] and Ms. Clomon caused or contributed to the accident and the death of Antonio Benjamin.
Antonio Benjamin was a very young and handicapped person and, because of this, was being transported to and from school on a bus designed for special education or handicapped students. Ms. Mitchell made a false assumption that, when Ms. Charles [sic] returned to the bus, Antonio was safely in his home. By her own testimony, she is supposed to remain stopped until she sees the child is safely across the street. Ms. Charles [sic] failed to remain outside the bus until Antonio had safely reached his house. Had she done so, she would have seen that the child did not immediately cross the street, and she would have seen the plaintiff. Ms. Clomon failed to slow her vehicle and failed to maintain proper lookout and was otherwise inattentive. School buses stopped to let children off or pick them up stick out like "sore thumbs." Regardless of whether she saw any stop signs or warning signals on the bus is of no moment to the Court. The mere presence of a school bus is enough to alert any motorist. Accordingly, the Court will apportion 70% of fault to the defendant and 30% of fault to the plaintiff.

APPORTIONMENT OF FAULT
In a tort action where the only real issue is reasonableness of conduct, the determination and apportionment of fault are factual matters. Bennett v. State Department of Transportation and Development, 503 So.2d 1022 (La.App. 2d Cir.1987), writs denied, 505 So.2d 58 (La.1987); Towns v. Georgia Casualty and Surety Company, 459 So.2d 124 (La.App. 2d Cir. 1984); Varnado v. Continental Insurance Company, 446 So.2d 1343 (La.App. 1st Cir. 1984). A reviewing court must give great weight to the assessment of witness credibility by the trial court and cannot disturb those evaluations unless they are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262, writ denied, 374 So.2d 660 (La.1979); *1104 Succession of Rodgers, 499 So.2d 492 (La. App. 2d Cir.1986). As was recently stated by our Supreme Court in Rosell v. ESCO, 549 So.2d 840, 844 (La.1989):
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
After reviewing the testimony and the evidence presented at the trial, we cannot say that the trial judge was clearly wrong in finding Ms. Giles, Ms. Mitchell, and the plaintiff negligent. Although there are great discrepancies in the testimony concerning whether Ms. Giles actually exited the bus with the child, we agree with the trial judge that she failed to perform her duty to ensure that a special education student got from the school bus to a place of safety. Ms. Giles herself was the only witness to testify positively that she exited the bus with the child and watched him run safely across Powell Street. Mr. Stovall testified at trial that he saw Ms. Giles exit the bus with the child but was later impeached by his earlier testimony given at the preliminary examination on December 13, 1983, in connection with criminal charges pending against Ms. Clomon,[4] where he stated that the child exited the bus alone. Even Ms. Mitchell could not state with certainty whether Ms. Giles got off the bus and watched the child cross the street on that particular day, because Ms. Mitchell's eyes were focused instead on the plaintiff's car approaching from the northa car which Ms. Giles apparently failed to see before allowing the child to cross the street alone.
We also find that the record supports the trial judge's finding that Ms. Mitchell was negligent in failing to see that Antonio reached his home safely before disengaging her visual signals and resuming motion. Ms. Mitchell testified that she always waits until the aide gets back inside the bus door before she closes the door (which automatically stops the warning lights on the bus from flashing), manually disengages the protruding stop signs, and begins to move the bus forward. When this routine is considered in connection with Ms. Giles's testimony that she was back on the bus at the moment of impact, Ms. Mitchell's admission that her eyes were focused on the car ahead, and testimony of other witnesses, such as Ms. Burks and plaintiff herself, that the signals were off and the bus was in motion at the time of the accident, it seems quite plausible that Ms. Mitchell also failed in her duty to keep motorists alerted until the child safely crossed the street, relying instead on the mere fact that Ms. Giles was back on the bus and thus assuming that the child had reached his home safely.
Obviously, the trial judge believed Ms. Burks and the plaintiff in concluding that the bus was moving before the impact, discounting Mr. Stovall's testimony (which had already been found inconsistent elsewhere) that the bus was stopped and the signals and lights engaged. As concerns the testimony of Mr. Jordan, whom appellant claims corroborated Mr. Stovall's testimony on this point, the record indicates that Mr. Jordan merely stated that the entire time he observed the mini-bus, its lights were flashing and the stop arms were out, but that he did not observe the bus the entire time he traveled towards it.

RE-CROSS EXAMINATION
By Mr. Zentner:
Q. Just to make sure I understand, Mr. Jordan, are you telling us that when it got to the vicinity of the 1900 block it did have it's [sic] lights on?
A. It had its lights on but from Louberta Street up until 1900the 1900 block of Powell I did not fix my eyes on that *1105 bus to testify that the lights were off or not because I had a bus load of students, but I will testify that when I came to the realization that there was a problem and saw that lady running the lights were on.
Q. And the stop arms were out?
A. The stop arms were out.
Q. And it was obviously stopped?
A. Yes, sir, it was stopped and stayed in that one position until I moved it.

* * * * * *

RE-DIRECT EXAMINATION
By Mr. Peacock:
Q. Was that the point that you saw the lady running?
A. Which point was that now?
Q. When you saw the lady running, is that when you saw the lights were on?
A. The second time, yes, that I can attest to.
Q. So to recapitulate for the Judge's benefit and mine you sayyou can testify the lights were on when you were at theapproximately at Louberta?
A. That's right.
Q. And you can testify the lights were on and the bus was stopped when you saw the lady running to pick the child up?
A. That's right. The lights were on and stopped in front of 1900 block.
After considering the testimony in the record, we cannot say that the trial judge was clearly wrong in finding that the bus had turned off its warning signals and resumed motion shortly before the accident.
As concerns plaintiff, a motorist is under a duty to see what an ordinarily prudent driver should have seen under the circumstances, and to avoid striking objects or pedestrians in the road ahead. Geoghegan v. Greyhound Corporation, 226 La. 405, 76 So.2d 412 (1954); McLeod v. Woodel, 341 So.2d 1261 (La.App. 2d Cir.1977), writ denied, 343 So.2d 735 (La.1977). Additionally, LSA-R.S. 32:80 mandates in part:
§ 80. Overtaking and passing school buses
A. (1) The driver of a vehicle upon a highway meeting or overtaking from any direction any school bus that has stopped for the purpose of receiving or discharging any school children shall stop the vehicle not less than thirty feet from the school bus before reaching such school bus when there are in operation on said school bus visual signals as required by R.S. 32:318, and said driver shall not proceed until such bus resumes motion or the visual signals are no longer activated.
Even if, as plaintiff testified, the bus's visual signals were no longer activated and the bus had begun moving as she neared it, we feel that an ordinary prudent driver would have been on the lookout for departing children and would have been traveling at a somewhat reduced speed until safely passing the bus.
Upon review of the record and the trial court's analysis of that record, we find no basis to disturb the apportionment of fault assigned by the trial court and accordingly uphold that assessment of fault as 70 percent to defendant and 30 percent to plaintiff.

PLAINTIFF'S CAUSE OF ACTION FOR MENTAL ANGUISH DAMAGES
Defendant's claim on appeal that the trial court erred in allowing plaintiff to assert a cause of action for her mental anguish is supported by numerous cases citing what defendant calls well-settled law in Louisiana that one cannot recover for alleged mental anguish or emotional distress caused by injury to another. While we recognize that this statement has been the general rule in Louisiana since the Louisiana Supreme Court decided Black v. Carrollton Railroad Co., 10 La.Ann. 33 (1855), we also realize that the law in this area is in somewhat of a state of flux at this time. Some courts of appeal have criticized the Black rule and urged its modification by our Supreme Court.[5] However, *1106 this circuit has already overruled defendant's exception of no cause of action on this issue, and we are bound by our prior ruling under the "law of the case" doctrine.[6] Under that doctrine, the final ruling on an exception is the law of the case as to the point covered if, after remand, the same point is reurged by the same parties upon a second appeal to such court on the merits. Keller v. Thompson, 134 So.2d 395 (La.App. 3rd Cir.1961). See also, Lord v. Broussard, 526 So.2d 458 (La.App. 5th Cir.1988); Terrio v. Terrio, 522 So.2d 654 (La.App. 5th Cir.1988); Thibodeaux v. Parks Equipment Company, 185 So.2d 232 (La.App. 1st Cir.1965), writs refused, 186 So.2d 157 and 159 (La.1966).[7]

DAMAGES
Defendant claims on appeal that the trial court's award of $25,000 in damages to plaintiff as a result of the accident was in error. Plaintiff, in her answer to appeal, prayed that the judgment be modified to increase the amount of damages from $25,000 to $270,000.
Plaintiff, who is a diabetic, claims that as a result of the accident she has suffered severe emotional trauma which aggravated her diabetic condition. On the day following the accident, plaintiff was admitted to the intensive care unit at Glenwood Hospital for diabetic ketoacidosis, a diabetic reaction which her doctor, Dr. Albert S. Donald, clearly connected with the accident and her anxiety from it. She was hospitalized five days at that time and during the next 33 months was hospitalized four other times at Glenwood Hospital for the same condition. Although Dr. Donald could not positively correlate the subsequent hospitalizations with plaintiff's anxiety suffered from the accident, he could not directly account for plaintiff's condition other than being the result of emotional stress.
Plaintiff was diagnosed by Dr. Gene D. Moore, a psychiatrist, as having "post-traumatic stress disorder." He treated plaintiff for her emotional disorder, which plaintiff claims caused her to have frequent nightmares and to diminish her ability to concentrate, resulting in her grades falling and her eventual withdrawal from Northeast Louisiana University Nursing School. This treatment, lasting from shortly after the accident until approximately January 1986, consisted in part of hospitalizing plaintiff at a psychiatric hospital for 21 days in the summer of 1984 for psychiatric therapy. Dr. Moore also testified that the effect of plaintiff's pending criminal charges for negligent homicide together with the possibility of criminal prosecution and a jail sentence no doubt intensified plaintiff's guilt sensitivity. Defendant in brief implies that plaintiff's emotional state was in large part due to the criminal charge against her and claims that any damages which could be directly attributed *1107 to the witnessing of the accident itself are only speculative and not provable by a preponderance of the evidence.
The trial court in its award of damages reasoned as follows:
The Court believes that the plaintiff's complaints about the emotional trauma she suffered are real and genuine. Only a callous or stoic person would not be affected by this accident. Although time is a great healer of the mind, the trauma suffered by the plaintiff will long remain with her. The Court further believes that a considerable amount of her trauma was eliminated when the negligent homicide charge was reduced to a misdemeanor. Because there are no precedents for this kind of injury, any amount awarded is arbitrary and it may well be too much or not enough, but that is for the appellate courts to decide. For this type of injury, the Court finds $25,000.00 to be a fair award.
Before a court of appeal can disturb a quantum award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion in making the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Fields v. Senior Citizens Center, Inc., 528 So.2d 573 (La.App. 2d Cir.1988); Towns v. Georgia Casualty and Surety Company, supra. As stated by the Louisiana Supreme Court, quoting its previous decisions on the issue:
Unless the record demonstrates that the trial court abused the "much discretion" provided for in fixing damages (C.C.1934), the appellate court should not disturb the award. The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it. That such evidence might also support a greater (or smaller) award will not justify a change in the amount by the appellate court.
Coco v. Winston Industries, Inc., supra, at 334 (citations omitted).
The Louisiana Supreme Court subsequently stated:
Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's "much discretion," La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.
Reck v. Stevens, 373 So.2d 498, 501 (La. 1979) (footnote omitted).
Once again, after having studied the record in this case with regard to plaintiff's claims of mental anguish, we cannot say that the trial court below abused its discretion in finding that plaintiff has indeed suffered mentally as a result of this accident and in awarding her damages. Furthermore, even if we were to search for prior awards for similar injuries, as the trial court stated, there has been no precedent for an award of damages for the type of injury that a person in plaintiff's position complains of. More importantly, Reck v. Stevens, supra, cautions us that an articulated analysis must first disclose an abuse of discretion before we may resort to a consideration of prior awards.[8]
Having considered the instant circumstances, we are of the view that the instant *1108 award is neither abusively high nor abusively low. The judgment of the trial court is therefore affirmed at appellant's costs.
AFFIRMED.
MARVIN, J., subscribes to the opinion and assigns additional remarks.
NORRIS, J., dissents and assigns written reasons.
MARVIN, Judge, subscribing to the opinion and assigning additional remarks:
I subscribe to the opinion and assign these additional remarks, particularly in the light of LeJeune, supra, and Devereux v. Allstate Insurance Company, 557 So.2d 1091 (La.App. 2d Cir.1990), rendered this date by another panel of this court.
I can envision a pedestrian fatality where four plaintiffs(1) the car driver; (2) his passenger; (3) a spectator on the sidewalk who is "impacted" by the body of the pedestrian; and (4) a similarly situated spectator who is not "impacted,"claim mental anguish from "sensing" [seeing, feeling, hearing] the suffering of the pedestrian who is struck by the car.
Even though each plaintiff's anguish from later feelings of guilt or helplessness may vary, each plaintiff apparently would share a common or basic reaction to the suffering of the pedestrian, the memory of which may be more or less vivid with the passage of time. Should we apply the LeJeune right-of-action limitation to all or part of the mental anguish of the four plaintiffs?
Should we revert to the perhaps outmoded "impact" rule, or apply the "zone of danger" analysis? See cases cited in Clomon I, 490 So.2d at 693. Should we apply the LeJeune right-of-action limitation to all or part of the mental anguish of the four plaintiffs? Should the result as to each plaintiff further vary according to who is suing whom for what, e.g., Driver Devereux claims physical and mental damages from the homeowner's insurer of the pedestrian; Driver Clomon claims only mental damage from the school board-custodian of the pedestrian child?
While we have considered at length the respective duties of the pedestrian and motorist in the Motor Vehicle Regulatory Act (Title 32) and have compared their negligence where the pedestrian is the plaintiff (See Finley v. North Assur. Co. of America, 476 So.2d 837 (La.App. 2d Cir.1985)), we have not seriously analyzed whether the duty of a pedestrian extends to protect against the mental anguish of a motorist who causes the fatal injury. In Clomon I and in Clomon II, we were and are considering only the extent of the duty of the school board to the mentally anguished driver who is not physically injured. In Devereux, we are considering mental and physical injury to the driver.
I suggest that all questions generated by each of the three cases (LeJeune, Clomon, and Devereux) should be addressed in the light of the others, by the supreme court on writ grants to avoid a multitude of distinctions that will arise in the trial courts and appellate courts.
NORRIS, Judge, dissenting.
I respectfully dissent.
When we first heard this case, we concluded that the plaintiff stated a cause of action. Clomon v. Monroe City Sch. Bd., 490 So.2d 691 (La.App. 2d Cir.1986). The settled law was to deny damages for mental anguish arising from the injury or death of someone else. Black v. Carrollton R. Co., 10 La.Ann. 33, 63 Am.Dec. 586 (1855). There was, nevertheless, a body of noncomforming jurisprudence ("maverick" decisions) that did permit recovery. See Smith, "Conventional Obligations: Damages for Mental Suffering," 23 La.L.Rev. 275 (1960). These cases appeared to carve out numerous exceptions to the Black rule. This writer felt that Clomon might well present facts that fit into the exceptions. This writer still feels that this plaintiff sustained real and serious psychological damage.
Since that time, the Third Circuit and the Supreme Court have addressed the issue squarely. LeJeune v. Rayne Branch Hosp., 539 So.2d 849 (La.App. 3d Cir.1989), aff'd 556 So.2d 559 (La.1990). The main *1109 importance of LeJeune, of course, is to modify the Black rule to allow recovery in certain instances. It also, however, clarifies and explains the jurisprudence and ratifies or subsumes the nonconforming cases; and it delineates the scope of a duty, the range of recovery. What was once unclear is now certain: even if she proves causation, duty and breach, a plaintiff may not recover for her mental anguish if it resulted from injury or death of someone who does not have a close relationship with the plaintiff. Here, Ms. Clomon was not closely related to young Benjamin. There is no longer any ground to speculate as to her right of recovery. It is foreclosed.
The majority's unwillingness to apply LeJeune is based, in part, on an alleged factual distinction which a close reading of the LeJeune opinions will not support. See Devereux v. Allstate Ins. Co., 557 So.2d 1091 (La.App. 2d Cir.1990), handed down this day.
It is also based on an inflexible application of the doctrine of "law of the case," which would in other circumstances mandate that we stand by our prior decision that found a cause of action. However, "law of the case" is not a matter of inflexible law but mere court policy; appellate courts are not absolutely bound by it, but may exercise a measure of discretion. Lord v. Broussard, 526 So.2d 458 (La.App. 5th Cir.1988). The doctrine should not be applied when to do so would work an obvious injustice, or where the former appellate decision was clearly, palpably or manifestly erroneous. Brumfield v. Dyson, 418 So.2d 21 (La.App. 1st Cir.1982), writ denied 422 So.2d 162 (La.1982). We are bound to follow the latest expression of law from the Supreme Court. Pelican State Asso. Inc. v. Winder, 253 La. 697, 219 So.2d 500 (1969); Lucky v. Fricks, 511 So.2d 1315 (La.App. 2d Cir.1987), writ denied 514 So.2d 455 (La.1987). The Supreme Court's LeJeune opinion makes our first Clomon opinion an incorrect statement of law. The instant judgment, based on the first Clomon, should be reversed.

ON APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, FRED W. JONES and LINDSAY, JJ.
Rehearing denied.
NOTES
[1] It was alleged at trial by plaintiff that this child was also deaf and mute, but no evidence was introduced to substantiate these allegations.
[2] The trial court noted that neither Mr. Carter nor Ms. Burks volunteered any information to the investigating police officer, although they both had the opportunity to do so. For whatever reasons, they came forward at trial almost four years later.
[3] The trial court opinion erroneously referred to Rosie Giles as Rosie Charles.
[4] Plaintiff was charged the night of the accident with negligent homicide. Sometime later, plaintiff appeared in Fourth Judicial District Court and, as part of a plea agreement, pled nolo contendere to negligent operation and was fined.
[5] See Bishop v. Callais, 533 So.2d 121 (La.App. 4th Cir.1988), writ denied, 536 So.2d 1214 (La. 1989); Mesa v. Burke, 506 So.2d 121 (La.App. 5th Cir.1987), writ denied, 506 So.2d 1226 (La. 1987); Blackwell v. Oser, 436 So.2d 1293 (La. App. 4th Cir.1983), writ denied, 442 So.2d 453 (La.1983).
[6] The defendant has urged by supplemental brief that the recent Louisiana Supreme Court opinion in LeJeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990), precludes recovery to this plaintiff who is not a relative of the deceased. While we agree LeJeune can be read to require that some relationship must exist between one claiming mental distress as a result of having witnessed as a bystander the injury of a relative or close associate, we conclude that LeJeune did not consider the specific circumstances at issue in the instant case. In other words, LeJeune was concerned with the duty owed by a tortfeasor not to cause emotional injury to a bystander who had a close association to the party whose injury was witnessed.

Our original Clomon, on the other hand, was concerned with the duty of a tortfeasor not to cause emotional injury to another by aiding that other party in causing the death of a third innocent party. Our Clomon holding was that since the plaintiff could have recovered for any physical injury which was suffered because of the breach of the other tortfeasor's duty, it was just as logical to allow the plaintiff to recover for serious emotional injury. We thus see an arguable significant distinction not contemplated by LeJeune and conclude that our previous result in this case should not be reconsidered.
[7] This author, however, has serious reservations about allowing one situated such as this tortfeasor to recover for emotional distress, but withholds these for another day because the issue has already been resolved adversely to the defendant in this case.
[8] The only similar situation encountered by this court is Fields v. Senior Citizens Center, Inc., supra, in which we affirmed an award of $92,500 to the daughter of a patient who had escaped from a nursing home as a result of the daughter killing her father with her car as he attempted to cross the street. We also affirmed awards of $7,500 to the daughter's siblings.