903 So.2d 613 (2005)
Charles P. CARDELLA, Plaintiff-Appellant
v.
Alton R. ROBINSON, Defendant-Appellee.
No. 39,663-CA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 2005.
*614 The Boles Law Firm by P. Scott Wolleson, Monroe, for Appellant, Charles P. Cardella.
Pujol & Pryor by Timothy E. Pujol, Brittany A. Keaton, Prairieville, for Appellees, Alton Robinson and State Farm Mutual Automobile Insurance Company.
The Schwab Law Firm by Jerry Hugh Schwab, Houma, for Appellee, State Farm Mutual Automobile Insurance.
Before STEWART, GASKINS and DREW, JJ.
GASKINS, J.
The plaintiff, Charles P. Cardella, appeals from the granting of summary judgment in favor of the defendants. The trial court found that a driver who allowed his intoxicated adult passenger to exit his car owed no duty to the plaintiff, a motorist who struck and killed the passenger when he walked into interstate traffic. We affirm.

FACTS
On July 5, 2002, shortly after 9:00 p.m., Levon Wilson was a passenger in a car driven by Alton Robinson on I-20 in Ouachita Parish. Loretta Gates, the aunt of Robinson's wife, and her young child were also riding in the car. The group was returning to Rayville from a family reunion in Monroe. At Wilson's insistence, Robinson stopped the car on the shoulder so Wilsonwho was intoxicated and increasingly belligerentcould exit to urinate. Robinson then drove to a nearby convenience store so he and Gates could use the bathroom. They then began to drive back to the place where Wilson had gotten out.
However, while they were gone, Wilson walked into the eastbound traffic lane of I-20 where he was struck and killed by a truck driven by the plaintiff. His body was severed in half. An autopsy revealed that Wilson's blood alcohol level was .308 and that cocaine was present in his system.
On December 18, 2002, the plaintiff filed suit against Robinson, alleging that he was aware of Wilson's drunken condition and that he was responsible for the accident because he allowed an incapacitated passenger to exit his car and remain unattended on the interstate. On March 13, 2003, Robinson filed an answer in which he asserted that the sole cause of the accident was the plaintiff's negligence. On April 15, 2004, the plaintiff filed a *615 supplemental and amending petition in which he added State Farm Mutual Automobile Insurance Company as Robinson's liability insurer, as well as his own UM carrier.[1]
On May 7, 2004, Robinson and State Farm filed a motion for summary judgment. They maintained that Robinson had no legal duty to protect the plaintiff from harm, i.e., he had no duty to prevent Wilson from walking into the path of the plaintiff's car. In support of the motion, they submitted the depositions of Robinson and Gates, his other adult passenger. They asserted that no special relationship exists between a driver and an adult passenger, even an intoxicated one.
The plaintiff filed an opposition to the motion for summary judgment on June 28, 2004. He contended that there are issues of material fact in dispute. In particular, he stated that there are conflicts as to whether Robinson had an agreement with Wilson that he would return to get him. In support of his opposition, the plaintiff submitted the deposition of the investigating officer, Trooper David Bryant.
On July 6, 2004, a hearing was held on the motion for summary judgment. Finding that Robinson owed no duty under the facts of this case, the trial court granted summary judgment. A judgment in conformity with the trial court's ruling was signed on August 27, 2004.
The plaintiff appealed.

SUMMARY JUDGMENT

Law
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Costello v. Hardy, XXXX-XXXX (La.1/21/04), 864 So.2d 129. A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2).
Louisiana applies a duty-risk analysis to determine whether liability exists under the particular facts presented. The plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of the protection afforded by the duty breached. Smith v. AAA Travel Agency, 37,728 (La.App. 2d Cir.10/29/03), 859 So.2d 286, writs denied, XXXX-XXXX (La.2/6/04), 865 So.2d 731, and XXXX-XXXX (La.2/6/04), 865 So.2d 735.
Whether a duty is owed is a question of law. Peterson v. Gibraltar Sav. and Loan, XXXX-XXXX (La.5/18/99), 733 So.2d 1198. The question of whether a duty exists is therefore suitable for summary judgment disposition. Smith v. AAA Travel Agency, supra.

Argument
The plaintiff maintains that, due to the horrific circumstances of Wilson's death, he now suffers from debilitating post-traumatic *616 stress disorder. He argues that Robinson owed a duty to other motorists to not create a road hazard by leaving an inebriated passenger on the side of the interstate. Also, he contends that a motorist such as Robinson owed a duty to protect against criminal conduct by his passenger, i.e., a pedestrian walking on the interstate in violation of La. R.S. 32:263(C), as well as a duty of protection to an intoxicated passenger. He asserts that there were conflicts in the testimony on such matters as the degree of Wilson's intoxication and whether Robinson had promised to return to pick Wilson up. The plaintiff claims that these differences are enough to defeat summary judgment.
The defendants argue that the trial court was correct in finding that Robinson owed the plaintiff no duty to prevent or control Wilson's criminal or tortious actions. Robinson had no "special" relationship with his passenger which obligated him to control his actions to prevent harm to others. They also maintain that he had no custodial duty over Wilson and no right to hold him in the car against his will. Furthermore, they contend that Wilson's violation of any statutes, such as La. R.S. 32:263(C) or La. R.S. 32:216(C), which prohibits pedestrians from crossing the interstate except in emergencies, are inconsequential because, in the absence of a special relationship, Robinson had no duty to prevent Wilson's actions even if criminal and foreseeable. As to the factual matters raised by the plaintiff, the defendants claim that they are irrelevant in determining the legal issue of whether Robinson owed a duty of protection to Wilson and "the motoring public."

Deposition testimony
According to the deposition testimony of Trooper Bryant, the investigating officer, Robinson told him that he let Wilson out of the car because he was persistent. He said he left Wilson so that he could take Gates to a nearby gas station. Robinson also stated to the trooper that he told Wilson not to get hit and he would be right back to get him at that spot. Bryant administered a field sobriety test to Robinson; he did not pass any part of it. Because he did not see Robinson behind the wheel of a car, he did not arrest him for DWI. Although he never observed Gates, he was told she had been drinking too. Consequently, the trooper said they were not allowed to leave the scene driving their car; however, he did not recall how they left the accident scene.
Robinson testified that Wilson wanted to use the bathroom and reached for the car door handle. Since Wilson had urinated in his car before, he didn't know if Wilson was going to do that again or jump out. He stopped the vehicle. Wilson exited and slammed the door, saying, "F___ you. I'll get home." Robinson stated that he always planned to return for Wilson after taking Gates to use the gas station bathroom, but he didn't tell him that. According to Robinson, he was given a field sobriety test but he was allowed to drive home.
In her deposition, Gates stated that Wilson insisted on getting out of the car to go to the bathroom. She heard Robinson tell him to "hold up" because he was driving them to a bathroom at the upcoming exit. Wilson started "messing" with the door, and he opened it as soon as the car stopped. She didn't hear Robinson tell Wilson not to get on the interstate. Nor did he tell Wilson they were coming back for him. She indicated that Robinson did not want to let Wilson out of the car but Wilson was persistent. According to Gates, they could not remain on the highway shoulder because of the traffic for the nearby exit. After they spoke to the officers, Robinson drove her and her child away from the accident scene.

*617 Discussion

There are obvious conflicts in the testimony of the three witnesses. Most notably, Robinson and Gates stated that Robinson did not tell Wilson that he intended to return for him while the trooper testified that Robinson claimed to have done so. We do not find that the conflicts are such that they affect the fundamental issue heredid Robinson have a duty to other motorists to not allow his intoxicated adult passenger to exit the vehicle on the side of the road.
The plaintiff has cited no case law directly imposing such a duty. However, he refers to Foster v. Lafayette Insurance Company, 504 So.2d 82 (La.App. 2d Cir.1987), writs denied, 505 So.2d 61, 65 (La.1987), as imposing a duty upon a driver to prevent his passenger from engaging in criminal conduct that endangers other motorists. In the Foster case, the court found liable a driver whose passenger threw a pumpkin through the windshield of another vehicle, causing serious injury to a passenger in that car. However, the driver was acting in concert with his passengers, chauffeuring them about as they collected various items which they then threw at other cars. He was an active participant in the criminal acts of his passengers. Thus, the case is distinguishable from the present one.
The plaintiff also cites Duvigneaud v. Government Employees Insurance Company, 363 So.2d 1292 (La.App. 4th Cir.1978), writ denied, 366 So.2d 560 (La.1979). In that case, a motorist was deemed negligent for not restraining a "large playful puppy" who jumped from the open windows of the vehicle and ran into a motorbike ridden by the plaintiff. The jury apparently concluded that, as the owner and operator of the car, the driver had some duty to restrain the animal who escaped through an open window while the driver was out of the car. While it is appropriate to require the exercise of reasonable care in controlling pets in an open vehicle, it is difficult to equate a "large playful puppy" over whom the driver exercised some custodial control with an adult human being who bears legal responsibility for his own actions and is answerable, civilly and criminally, for his own misconduct. See and compare Clomon v. Monroe City School Board, 557 So.2d 1100 (La.App. 2d Cir.1990), affirmed, 572 So.2d 571 (La.1990), which found that a school bus driver transporting special education students had a special statutory duty to other motorists to refrain from prematurely deactivating the bus signals.
In Posecai v. Wal-Mart Stores, Inc., XXXX-XXXX (La.11/30/99), 752 So.2d 762, the Louisiana Supreme Court discussed the means by which the court decided whether to impose liability:
This court has adopted a duty-risk analysis to determine whether liability exists under the particular facts presented. Under this analysis the plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached. Under the duty-risk analysis, all four inquiries must be affirmatively answered for plaintiff to recover.
A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Whether a duty is owed is a question of law. In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. The court may consider various moral, social, and economic factors, including the fairness of imposing liability; the economic impact *618 on the defendant and on similarly situated parties; the need for an incentive to prevent future harm; the nature of defendant's activity; the potential for an unmanageable flow of litigation; the historical development of precedent; and the direction in which society and its institutions are evolving. [Citations omitted.]
No special relationship creating a duty existed between Robinson and Wilson, nor was the circumstance presented here one in which a duty should be imposed. Robinson had no right to imprison Wilson within the confines of his car against Wilson's wishes. He had no duty to continue driving when Wilson insisted on being let out of the vehicle while trying to use the door handle to open the door of the still moving car. Nor did Robinson have a duty to wrestle Wilson in order to force him to remain in the car once it was stopped. Furthermore, he certainly had no duty to disembark on the highway himself in order to struggle with Wilson to keep him from crossing the interstate. Robinson was merely a person giving a friend a ride. That the friend was intoxicated does not alter this fact.
The plaintiff claims the violation of statutorily imposed duties. It shall be unlawful for any pedestrian to cross an interstate highway, except in the case of an emergency. La. R.S. 32:216(C). The use of any Louisiana interstate highway by pedestrians is prohibited. La. R.S. 32:263(C). According to the plaintiff, Robinson should have prevented Wilson from violating these statutes by refusing to allow him to leave the car. These statutes apply to a pedestrian like Wilson. They do not impose a statutory duty upon a driver like Robinson. There is generally no duty to protect others from the criminal activities of third persons. Posecai, supra.
No person shall stop on any state highway shoulder when such stopping shall obstruct the flow of traffic or is a hazard to public safety, unless such stopping is made necessary by an emergency. La. R.S. 32:296(A). Robinson was presented with an intoxicated and belligerent passenger who tried to open the door of a moving vehicle as they traveled on an interstate. Under these circumstances, Robinson was faced with an emergency; stopping on the highway shoulder was appropriate and not a violation of his own statutory duty.
Were we to impose upon a driver the duty sought by the plaintiffa custodial duty to control drunken adult passengers and prevent them from committing tortious or criminal actsit would have far-reaching consequences. The most obvious is the chilling effect it would have for "designated drivers" who offer rides to persons who are too intoxicated to drive. If faced with dire legal consequences such as the present lawsuit, drivers might be less willing to offer assistance to inebriated persons. Also, we must consider the burden this would place upon drivers of common carriers to police the conduct of their adult passengers once they have left the vehicle. We are mindful of the potential for a substantial increase in the flow of litigation that imposition of such a duty might precipitate.
Like the trial court, we find that the law does not impose upon a driver a duty to other motorists to physically prevent an insistent, intoxicated adult from exiting his vehicle.

CONCLUSION
The judgment of the trial court is affirmed. Costs are assessed against the plaintiff/appellant, Charles P. Cardella.
AFFIRMED.
NOTES
[1] State Farm filed an answer in its capacity as the plaintiff's UM carrier on May 13, 2004, as well as an answer as Robinson's liability insurer on May 17, 2004.